# EXHIBIT A-27

STATE OF NEW YORK
SUPREME COURT          ST. LAWRENCE COUNTY

SERVANTS OF JESUS AND MARY, INC., d/b/a THE
FATIMA CENTER,
17000 State Route30
Constable, New York 12926

                      *Plaintiff,*

      -vs-

THE NATIONAL COMMITTEE FOR THE NATIONAL
PILGRIM VIRGIN OF CANADA
452 Kraft Road
Fort Erie, Ontario, Canada L2A 4M7

THE FATIMA CENTER U.S.A., INC.,
P.O. Box 1470
Buffalo, New York 14240

ANDREW CESANEK
3143 Bellreng Drive, Apt. 11
Niagara Falls, NY 14304
                   *Defendants.*

**SUPPLEMENTAL
SUMMONS**

Index No.: CV-2018-152396

Date Filed:

Basis of Venue:
CPLR § 509

**TO THE ABOVE-NAMED DEFENDANTS:**

    **YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff Servants of Jesus and

Mary, Inc., attorneys an Answer to the Amended Complaint in this action within twenty (20) days after

the service of this Summons, exclusive of the day of service, or within thirty (30) days after service is

complete if this Summons is not personally delivered to you within the State of New York. In case of

your failure to answer, Judgment will be taken against you by default for the relief demanded in the

Amended Complaint.

    The venue is based on CPLR § 509.

14915819.1

**DATED**: June 5, 2018

**BARCLAY DAMON LLP**

By: _____
    Matthew J. Larkin, Esq.
    Jason S. Nardiello, Esq.

*Attorneys for Plaintiff*
Office and Post Office Address
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone: (315) 425-2805

**TO:**   **Kloss, Stenger & LoTempio**
Justin D. Kloss, Esq.
*Attorneys for Defendants*
*The National Committee for the National Pilgrim Virgin of Canada,*
*and The Fatima Center U.S.A., Inc.*
Office and Post Office Address
69 Delaware Street, Suite 1003
Buffalo, New York 14202
Telephone: (716) 853-1111

**Andrew Cesanek**
3143 Bellreng Drive, Apt. 11
Niagara Falls, NY 14304

- 2 -

14915819.1

SUPREME COURT
STATE OF NEW YORK        COUNTY ST. LAWRENCE

**SERVANTS OF JESUS AND MARY, INC., d/b/a THE
FATIMA CENTER**

> *Plaintiff,*

    *-vs-*

**THE NATIONAL COMMITTEE FOR THE
NATIONAL PILGRIM VIRGIN OF CANADA, THE
FATIMA CENTER U.S.A., INC., and ANDREW
CESANEK,**

> *Defendants.*

**AMENDED COMPLAINT**

Index No.: CV-2018-152396

       Plaintiff Servants of Jesus and Mary, Inc., d/b/a The Fatima Center ("Plaintiff" or

"SJM"), by its attorneys, Barclay Damon LLP and as and for the Amended Complaint against

Defendants The National Committee for the National Pilgrim Virgin of Canada ("National

Pilgrim"), The Fatima Center U.S.A., Inc., ("Fatima Center U.S.A."), and Andrew Cesanek

(collectively "Defendants"), hereby alleges as follows:

<u>PARTIES</u>

       1.     Plaintiff is a New York not-for-profit corporation, formed in 1988 under and by

virtue of the laws of the State of New York, with its principal place of business located at 17000

State Route 30, Constable, NY 12926.

       2.     Upon information and belief, National Pilgrim is a Canadian corporation, formed

in 1974 under and by virtue of the laws of the Province of Ontario, with its principal place of

business located at 452 Kraft Road, Fort Erie, Ontario, Canada L2A 4M7.

15180580.1

3.     Upon information and belief, Fatima Center U.S.A. is a New York not-for-profit corporation, formed in 2017 under and by virtue of the laws the State of New York, with a business address of P.O. Box 1470 Buffalo, NY 14240.

4.     Upon information and belief, Fatima Center U.S.A. listed the property owned by Plaintiff, located at 468 19th Street, Niagara Falls, NY 14303 ("Plaintiff's Niagara Falls Facility"), as its location for mail process on its Articles of Organization filed with the New York State Department of State in June 2017.

5.     Andrew Cesanck is a natural person and resident of 3143 Bellreng Drive, Apt. 11, Niagara Falls, NY 14304, in the County of Niagara and the New York State.

6.     At all times relevant hereto, up to and including August 28, 2017, Andrew Cesanek was a member of Plaintiff's board of directors.

7.     At all times relevant hereto, up to and including September 11, 2017, Andrew Cesanek was an employee of Plaintiff.

### JURISDICTION AND VENUE

8.     This court has subject matter jurisdiction over this matter because it arises out of New York State statutes and common law.

9.     This court has concurrent jurisdiction over violations of the Lanham Act, 15 U.S.C. § 1125.

10.    This court has personal jurisdiction over National Pilgrim pursuant to CPLR §§ 301, 302 on the basis that National Pilgrim committed and continues to commit tortious acts within the state.

11.    This court has personal jurisdiction over National Pilgrim pursuant to CPLR §§ 301, 302 on the basis that National Pilgrim committed and continues to commit tortious acts

2

15180580.1

without the state causing injury to persons or property within the state, and (i) regularly does or

solicits business, or engages another persistent course of conduct, or derives substantial revenue

from goods used or services rendered in the state; or (ii) expects or reasonably should expect the

act to have consequences in the state and derives substantial revenue from interstate or

international commerce.

12.     This court has personal jurisdiction over Fatima Center U.S.A. pursuant to CPLR

§§ 301, 302 on the basis that Fatima Center U.S.A. is a New York corporation.

13.     This court has personal jurisdiction over Andrew Cesanek, pursuant to CPLR §

301 on the basis that Andrew Cesanek is a resident of New York State.

14.     The amount in controversy exceeds the jurisdictional limits of all lower courts.

15.     Venue is proper pursuant to CPLR § 509.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

### Relevant History of Plaintiff and National Pilgrim

16.     Prior to its incorporation, the predecessor to Plaintiff was formed in 1978 as an

apostolate spiritual group of the Roman Catholic Church under the leadership of Fr. Michael

Jarecki, an ordained Roman Catholic priest.

17.     In or about 1981, Plaintiff's predecessor group began to work collaboratively with

National Pilgrim and National Pilgrim's president, Fr. Nicholas Gruner, an ordained Roman

Catholic priest, on matters of spiritual outreach and formation and on production and distribution

of the *Fatima Crusader* publication.

18.     In 1988, Plaintiff was organized and incorporated to spread and promote

knowledge of and obedience to, the message of Our Lady of Fatima and related matters; to

promote the spiritual, intellectual and apostolic formation of workers for the message of Fatima;

3

to maintain mailing lists and to mail and ship religious books, materials, publications, video and audio tapes and films; to promote knowledge of and devotion to the Blessed Virgin Mary; to facilitate broadcast of radio and television programs with respect to the Fatima message; to promote the *Fatima Crusader* magazine; to promote and aid regional centers, organizations and individuals with similar purposes; and to promote pilgrimages to Fatima and approved apparition sites.

19.     At the time of Plaintiff's incorporation, Fr. Jarecki was the Chairman of the board of directors and Fr. Gruner was one of the directors.

20.     In or about 1989, Fr. Gruner was elected president of Plaintiff and served in that role until his death in 2015.

21.     Upon information and belief, Fr. Gruner became president of National Pilgrim in 1981 and served in that role until his death in 2015.

22.     Plaintiff and National Pilgrim worked together subsequent to 1988 in spreading the Fatima message, with Plaintiff conducting its efforts in the United States and National Pilgrim conducting its efforts in Canada and other locations outside of the United States.

23.     Under the leadership of Fr. Gruner, Plaintiff and National Pilgrim often cooperated in, amongst other things, joint publications and other programs, and sharing resources.

24.     While Plaintiff and National Pilgrim shared Fr. Gruner's leadership and shared a similar goal of spreading the Fatima message, each has been and is a separate and distinct organization with differing board members and different geographic operations.

25.     During the course of its operations, Plaintiff assembled a computerized mailing list consisting of the names and addresses of approximately 900,000 U.S. residents, including

4

15180580.1

present, past, active, inactive and deceased individuals ("Plaintiff's Mailing List"), from which Plaintiff received the bulk of its pledges and donations.

26.     Plaintiff's Mailing List was and is owned by Plaintiff, proprietary to Plaintiff and was intended to be used for Plaintiff's benefit.

27.     National Pilgrim was granted rights to use Plaintiff's Mailing List by Plaintiff for joint mailings and publications starting in 2005.

28.     Since approximately 2005, Plaintiff's Mailing List was maintained on a software system known as "Donor Tracker."

29.     The content and data contained on Plaintiff's Mailing List were entered, created, updated and managed by Plaintiff's employees on Plaintiff's computers, at Plaintiff's offices.

30.     On a regularly, often daily, basis Plaintiff's employees would run a bridge computer program, which uploaded Plaintiff's Mailing List to National Pilgrim's computer system so that it could be used for joint mailings and publications.

31.     In April 2017, National Pilgrim installed a software system on Plaintiff's computers known as "Fatima Tracker" which allowed National Pilgrim to directly access Plaintiff's Mailing List for the first time.

32.     Although it was managed on the Fatima Tracker system, Plaintiff's Mailing List remained the exclusive property of Plaintiff.

33.     Upon information and belief, Plaintiff's Mailing List remained separate from other mailing lists held on the National Pilgrim computer network.

### The FATIMA CENTER Mark

34.     Since at least as early as 2004, Plaintiff has operated in the United States under the name "The Fatima Center."

15180580.1

35.     On or about September 16, 2004, pursuant to the terms of General Business Law ("GBL") § 130, Plaintiff filed an Assumed Name Certificate with the New York State Division of State for the name "The Fatima Center."

36.     On or about September 16, 2004, pursuant to the terms of GBL § 130, Plaintiff filed an Assumed Name Certificate with the New York State Division of State for the name "The Fatima Network."

37.     On about September 16, 2004, pursuant to the terms of GBL § 130, Plaintiff filed an Assumed Name Certificate with the New York State Division of State for the name "Fatima Network Television (FNTV)."

38.     Copies of the New York State Division of State filing receipts for the Assumed Name Certificates are attached collectively as Exhibit "A."

39.     Since at least as early as 2004, Plaintiff has been the sole and exclusive user of the FATIMA CENTER trademark (the "FATIMA CENTER Mark") in the United States and the related marks, including "THE FATIMA CENTER," "THE FATIMA NETWORK" and "FATIMA NETWORK TELEVISION (FNTV)."

40.     Plaintiff's rights in the FATIMA CENTER Mark and the related marks began on their first use in New York, since at least as early as 2004.

41.     Since at least as early as 2004, the FATIMA CENTER Mark and the related marks have been in continuous use by Plaintiff.

42.     Since at least as early as 2004, National Pilgrim has been aware that Plaintiff has been the sole and exclusive owner and user of the FATIMA CENTER Mark and related marks in the United States.

6

15180580.1

43.     Upon information and belief, since it was formed in June 2017, Fatima Center U.S.A. has been aware that Plaintiff has been the sole and exclusive user of the FATIMA CENTER Mark and related marks in the United States.

44.     At no time has National Pilgrim operated within the United States under the name "The Fatima Center" or any similar name, until it established Fatima Center U.S.A. for the purpose of infringing upon the FATIMA CENTER Mark and related marks held by Plaintiff.

45.     The FATIMA CENTER Mark and related marks are valid and are in full force and effect.

### Plaintiff's Niagara Falls Facility

46.     In November 2014, Plaintiff purchased Plaintiff's Niagara Falls Facility, consisting of a commercial building and surrounding lot, located at 468 19th Street, Niagara Falls, NY 14303.

47.     In order to purchase Plaintiff's Niagara Falls Facility, Plaintiff obtained a loan from M&T Bank secured by a mortgage and promissory note.

48.     Since November 2014, subject only to the mortgage, Plaintiff has been the sole owner of Plaintiff's Niagara Falls Facility.

49.     Plaintiff's Niagara Falls Facility was used as the location for Plaintiff's St. Joseph's Book Center, another assumed name Plaintiff has on file with the New York State Division of State.

50.     Plaintiff's Niagara Falls Facility was also used for office space and to store and warehouse religious materials, publications and literature that were jointly used by Plaintiff and National Pilgrim in their missions of promoting the message of Our Lady of Fatima and related matters.

7

15180580.1

51.     From on or about November 2014 to August 2017, a fund raising campaign was conducted jointly by Plaintiff and National Pilgrim to raise money to pay down the mortgage loan and pay for repairs and renovations to Plaintiff's Niagara Falls Facility.

52.     Upon information and belief, the fund raising campaign raised approximately $230,000 through donations, which were and are held by National Pilgrim.

53.     The donations made during the fund raising campaign were intended to pay down the mortgage loan, and pay for repairs and renovations to Plaintiff's Niagara Falls Facility.

54.     National Pilgrim has neglected, failed and refused to remit the funds raised during the fund raising campaign to Plaintiff to pay down the mortgage loan held on Plaintiff's Niagara Falls Facility.

55.     National Pilgrim has neglected, failed and refused to remit the funds raised during the fund raising campaign to Plaintiff so that they can be used for their intended purpose.

56.     Upon information and belief, National Pilgrim has misappropriated and converted the funds raised during the fund raising campaign for National Pilgrim's own use.

**Formation of Fatima Center U.S.A.**

57.     On or about June 19, 2017, Fatima Center U.S.A. was formed without the knowledge of Plaintiff.

58.     Upon information and belief, Fatima Center U.S.A. was created as a mail-processing facility for National Pilgrim to accept donations and issue tax receipts in the United States.

59.     Despite National Pilgrim's knowledge of Plaintiff's exclusive rights to the FATIMA CENTER Mark and related marks in the United States, National Pilgrim established

Fatima Center U.S.A. to cause confusion as to the source, sponsorship, or affiliation of Plaintiff's services and divert donations intended for Plaintiff.

60.     At the time Fatima Center U.S.A. was formed, Andrew Cesanek served as a director of Fatima Center U.S.A.

61.     Upon information and belief, Andrew Cesanek continues to serve as a director of Fatima Center U.S.A.

62.     At the time Fatima Center U.S.A. was formed, Andrew Cesanek was an employee of Plaintiff.

63.     At the time Fatima Center U.S.A. was formed, Andrew Cesanek was a member of Plaintiff's board of directors, serving as second vice president.

64.     From June 19, 2017 through September 11, 2017, Andrew Cesanek was both an employee of Plaintiff and a director or Fatima Center U.S.A.

65.     From June 19, 2017 through August 28, 2017, Andrew Cesanek was both a member of Plaintiff's board of directors and a director of Fatima Center U.S.A.

66.     Andrew Cesanek did not disclose the formation and existence of Fatima Center U.S.A. to Plaintiff prior to resigning from Plaintiff's board of directors on August 28, 2017.

67.     Andrew Cesanek did not disclose his position as a director of Fatima Center U.S.A. to Plaintiff prior to resigning from Plaintiff's board of directors on August 28, 2017.

68.     Upon information and belief, Andrew Cesanek, conducted business activities on behalf of Fatima Center U.S.A., from Plaintiff's Niagara Falls Facility, without Plaintiff's knowledge and without the right or permission to use Plaintiff's Niagara Falls Facility for that purpose.

9

15180580.1

69.     Since the time of its incorporation on June 19, 2017, Fatima Center U.S.A. has had no affiliation with Plaintiff.

70.     Fatima Center U.S.A. listed Plaintiff's Niagara Falls Facility as its location for mail process on its Articles of Organization filed with the New York State Department of State without the knowledge or permission of Plaintiff.

71.     Since the time of its incorporation on June 19, 2017, Fatima Center U.S.A. has had no right or permission to enter or use Plaintiff's Niagara Falls Facility.

72.     Since the time of its incorporation on June 19, 2017, Fatima Center U.S.A. has had no right or permission to conduct business, receive mail or receive process at Plaintiff's Niagara Falls Facility.

**National Pilgrim's Separation from Plaintiff**

73.     On or about May 1, 2017, Fr. Paul Kramer, an ordained Roman Catholic priest, was elected president of Plaintiff.

74.     On or about July 24, 2017, a meeting was held between members of the board of directors of Plaintiff, excluding Fr. Kramer who was unable to attend due to a medical condition, and members of the board of directors of National Pilgrim at National Pilgrim's offices in Fort Erie, Ontario.

75.     During the July 24, 2017 meeting, National Pilgrim's board demanded that Fr. Kramer be removed as president of Plaintiff or National Pilgrim would sever its relationship with Plaintiff.

76.     On or about August 22, 2017, National Pilgrim on behalf of itself and, on information and belief, on behalf of Fatima Center U.S.A., published and distributed a letter to

10

15180580.1

its own mailing list and to Plaintiff's Mailing List of approximately 900,000 recipients. A copy of the letter is attached hereto as Exhibit "B."

77.    The August 22, 2017 letter was signed by Leonard Cecere, president of National Pilgrim and other members of National Pilgrim's and Fatima Center U.S.A.'s, board of directors, including Andrew Cesanek, identified as "Vice President, The Fatima Center".

78.    At the time the August 22, 2017 letter was published and distributed, Andrew Cesanek was an employee of Plaintiff.

79.    At the time the August 22, 2017 letter was published and distributed, Andrew Cesanek was a member of Plaintiff's board of directors, serving as second vice president.

80.    Upon information and belief, National Pilgrim caused the August 22, 2017 letter to be published and posted on the Internet, directed and available to the public at-large.

81.    The August 22, 2017 letter falsely stated that "Father Gruner set up Servants of Jesus and Mary, Inc. ("SJM"), a not-for-profit corporation under the laws of New York State. SJM was created to receive and process mail received within the United States."

82.    The August 22, 2017 letter falsely stated that "[t]he Board of Directors of SJM were not involved in the creation and implementation of programs to achieve The Fatima Center's mission, nor in the writing or production of The Fatima Center literature, nor even in making decisions about the daily operations of SJM. All of that was done by Father Gruner and The Fatima Center management team."

83.    The August 22, 2017 letter announced that National Pilgrim was severing its connection with Plaintiff.

84.    The August 22, 2017 letter announced the formation of Fatima Center U.S.A.

11

15180580.1

85.     The August 22, 2017 letter falsely described Plaintiff as "the U.S. mail-processing facility."

86.     The August 22, 2017 letter advised Plaintiff's donors that "**All future checks and donations should be made to The Fatima Center USA Inc., rather than the Servants of Jesus and Mary.**"

87.     On August 24, 2017, Leonard Cecere, president of National Pilgrim advised Plaintiff's board of directors via electronic mail that National Pilgrim was severing its connections to Plaintiff.

88.     Mr. Cecere's August 24, 2017 electronic mail to Plaintiff included the first notification to Plaintiff of the creation of Fatima Center U.S.A.

89.     Mr. Cecere's August 24, 2017 electronic mail to Plaintiff advised Plaintiff that National Pilgrim had ended Plaintiff's access to the jointly used computer system, thereby cutting off Plaintiff's access to Plaintiff's Mailing List.

**Defendants' Continuing Infringement, Unfair Competition,
Defamation, Conversion and Tortious Conduct**

90.     On or about September 1, 2017, National Pilgrim on behalf of itself and, on information and belief, on behalf of Fatima Center U.S.A., published and distributed a letter to its own mailing list and to Plaintiff's Mailing List of approximately 900,000 recipients.  A copy of the letter is attached hereto as Exhibit "C."

91.     The September 1, 2017 letter was signed by Andrew Cesanek.

92.     At the time the September 1, 2017 letter was published and distributed, Andrew Cesanek was an employee of Plaintiff.

12

93.     The September 1, 2017 letter, falsely stated that Plaintiff was "formed by Father Nicholas Gruner and [has] been maintained by the management team, Board of Directors and staff of The Fatima Center Canada offices since Father's passing in April 2015."

94.     The September 1, 2017 letter, falsely stated that "Although your monthly payments were received and processed through Servants of Jesus and Mary, all funds were forwarded to the head office in Canada. . . ."

95.     The September 1, 2017 letter asked recipients to "be sure to contact Servants of Jesus and Mary at 518-483-7626 and cancel you pledge club membership and ask them to void and return your post-dated checks. . . ."

96.     At a point in time on or after June 19, 2017, Fatima Center U.S.A. on behalf of itself and, on information and belief, on behalf of National Pilgrim, issued an "**URGENT NOTICE**" published and distributed to the National Pilgrim mailing list and to Plaintiff's Mailing List. A copy of the "**URGENT NOTICE**" is attached hereto as Exhibit "D."

97.     Upon information and belief, at the time the "**URGENT NOTICE**" was published and distributed, Andrew Cesanek was an employee of Plaintiff.

98.     Upon information and belief, at the time the "**URGENT NOTICE**" was published and distributed, Andrew Cesanek was a member of Plaintiff's board of directors, serving as second vice president.

99.     Upon information and belief, Fatima Center U.S.A. caused the "**URGENT NOTICE**" to be published and posted on the Internet, directed and available to the public at-large.

100.    The "**URGENT NOTICE**" falsely identified Fatima Center U.S.A. as "The Fatima Center."

13

15180580.1

101.   The **"URGENT NOTICE"** falsely stated that Plaintiff "can not collect your monthly donation because they cannot fulfill the goals which your gifts are used for."

102.   The **"URGENT NOTICE"** falsely stated that: "SJM is trying to change your donation to another club that they have now created and is not affiliated with The Fatima Center or the work of Father Gruner."

103.   Upon information and belief, during the summer and fall months of 2017, National Pilgrim and/or Fatima Center U.S.A. entered Plaintiff's Niagara Falls Facility and unlawfully removed religious materials, statuary, publications, literature and equipment owned by Plaintiff without Plaintiff's permission or consent.

104.   On or about September 21, 2017, National Pilgrim was notified in writing that its permission to use Plaintiff's Mailing List had been rescinded by Plaintiff.

105.   On or about September 21, 2017, Plaintiff demanded in writing that National Pilgrim immediately cease use of Plaintiff's Mailing List and return it to Plaintiff.

106.   Despite Plaintiff's demand, Defendants National Pilgrim and Fatima Center U.S.A. have neglected, failed and refused to return Plaintiff Mailing List.

107.   Upon information and belief, Defendants National Pilgrim and Fatima Center U.S.A. continue to use Plaintiff's Mailing List without Plaintiff's permission and consent.

108.   On or about October 10, 2017, National Pilgrim, applied for a U.S. trademark registration for the term, THE FATIMA CENTER (Appln. No. 87/640,196).

109.   The trademark application for the term, THE FATIMA CENTER (Appln. No. 87/640,196) has not yet been published by the U.S. Patent and Trademark Office.

110.   At the time National Pilgrim applied for a U.S. trademark registration for the term, THE FATIMA CENTER (Appln. No. 87/640,196), National Pilgrim knew that Plaintiff

14

has been the sole and exclusive user of the FATIMA CENTER Mark and related marks in the United States.

111.    On or about November 22, 2017, counsel for Fatima Center U.S.A. sent a letter to Plaintiff falsely claiming trademark infringement and unfair business practices for use of the FATIMA CENTER Mark, which had been held by Plaintiff since at least 2004.

112.    The November 22, 2017 letter falsely stated that Plaintiff was "receiving and depositing checks written to [Fatima Center U.S.A.] by donors intending for their money to be directed to [Fatima Center U.S.A.] and its various pledge clubs."

113.    Since on or about September 2004, Plaintiff has used the Fatima Center name for banking purposes, including depositing of donation pledge checks from donors made out to one The Fatima Center or the related marks.

114.    The November 22, 2017 letter was copied and published to the manager of Community Bank in Malone, NY where Plaintiff kept an account for banking including the deposit of pledges and donations.

115.    As a consequence of the November 22, 2017 letter, Community Bank refuses to honor any checks presented by Plaintiff made out to "The Fatima Center."

116.    On December 21, 2017, Plaintiff through counsel, sent a cease and desist letter to National Pilgrim and Fatima Center U.S.A. stating, among other demands, that: "*National Pilgrim and [Fatima Center U.S.A.] are hereby required to immediately cease and desist the rendering of any services or advertising, marketing, distributing, importing, exporting or selling any product in the United States under [THE FATIMA CENTER, THE FATIMA NETWORK and FATIMA NETWORK TELEVISION FNTV] or any other phrase likely to cause confusion with it, on the Internet, in social media, and in print advertising.*"

15

15180580.1

117. In or around May 2018, Defendants National Pilgrim and Fatima Center U.S.A. announced their intention to launch a redesigned website, under "The Fatima Center" banner.

118. On May 8, 2018, Plaintiff through counsel, sent a cease and desist letter to counsel for Defendants National Pilgrim and Fatima Center U.S.A., stating, among other things, "that this action is willful in light of the ongoing litigation" and demanding that Defendants National Pilgrim and Fatima Center U.S.A., "**cease and desist** from infringing on the FATIMA CENTER mark, including launching the new website."

119. On or about May 13, 2018, despite Plaintiff's demand, Defendants National Pilgrim and Fatima Center U.S.A. launched a redesigned website under the banner "The Fatima Center."

120. Despite Plaintiff's demands, upon information and belief, Defendants National Pilgrim and Fatima Center U.S.A. have refused to cease and desist and continue to use the FATIMA CENTER Mark without Plaintiff's permission or consent and continue to infringe on Plaintiff's FATIMA CENTER Mark.

121. Despite Plaintiff's demand, upon information and belief, Defendants National Pilgrim and Fatima Center U.S.A. have refused cease and desist from utilizing Plaintiff's proprietary information including Plaintiff's Mailing List and continue to use Plaintiff's Mailing List for the benefit of Defendants National Pilgrim and Fatima Center U.S.A. without permission or authority.

122. Despite Plaintiff's demand, Defendants National Pilgrim and Fatima Center U.S.A. have neglected, failed and refused to account to Plaintiff for any donations received as a result of Defendants National Pilgrim's and Fatima Center U.S.A.'s unauthorized use of Plaintiff's proprietary materials, mailing list and FATIMA CENTER Mark.

16

15180580.1

123.    Despite Plaintiff's demand, Fatima Center U.S.A. has neglected, failed and refused to withdraw their objection to Plaintiff's use of the FATIMA CENTER Mark for banking purposes.

124.    Despite Plaintiff's demand, upon information and belief, National Pilgrim has neglected, failed and refused to file a notice of express abandonment of U.S. trademark application No. 87/640,196 with the United States Trademark Office.

125.    Despite Plaintiff's demand, upon information and belief, Fatima Center U.S.A. has neglected, failed and refused to amend its filings with the New York State Department of State to remove all references to Plaintiff's Niagara Falls Facility.

126.    Despite Plaintiff's demand, Defendants National Pilgrim and Fatima Center U.S.A. have neglected, failed and refused to return the publications and other inventory materials removed from Plaintiff's Niagara Falls Facility.

127.    Despite Plaintiff's demand, Defendants National Pilgrim and Fatima Center U.S.A. have neglected, failed and refused to enter into a written agreement binding them not to render services, or market, advertise, or sell products in the United States under the phrase, The Fatima Center, nor any other mark that is likely to cause confusion with it in the future.

128.    Despite Plaintiff's demand, Defendants National Pilgrim and Fatima Center U.S.A. have neglected, failed and refused to agree to reimburse Plaintiff for its attorney fees.

### Consequences of Defendants' Conduct

129.    As a result of Defendants' actions and conduct, Plaintiff no longer has access to Plaintiff's Mailing List of approximately 900,000 names and U.S. addresses, from which most of its pledges and donations were received.

17

15180580.1

130.   From 2012 to 2016, Plaintiff averaged approximately $4,300,000.00 per year in annual revenue from pledges and donations.

131.   As a result of Defendants' actions and conduct, Plaintiff's annual revenue from pledges and donations in 2017 dropped to approximately $2,900,000.00.

132.   As a result of Defendants' actions and conduct, Plaintiff has received approximately $180,000.00 in pledges and donations, which included a $75,000 one-time gift, as of March 2018, making Plaintiff's expected annual revenue from pledges and donations in 2018 to be approximately $425,000.00 to $500,000.00.

133.   As a result of Defendants' actions and conduct, Plaintiff's bank will no longer accept checks for pledges and donations made out to The Fatima Center.

134.   As a result of Defendants' actions and conduct, Plaintiff has been deprived of its property in the form of religious materials, statuary, publications, literature and equipment.

135.   As a result of Defendants' actions and conduct, Plaintiff continues to owe a mortgage loan of approximately $85,000 for Plaintiff's Niagara Falls Facility that was meant to be paid from the fund raising campaign.

136.   Upon information and belief, Defendants National Pilgrim's and Fatima Center U.S.A.'s use of Plaintiff's name, identification and marks have caused actual confusion among Plaintiff's donors and members of the public at large as to as to the identity and source of the products and/or services rendered.

137.   As a consequence of all of the foregoing, Plaintiff's ability to solicit and collect pledges and donations consistent with its mission and purpose has been severely diminished such that Plaintiff is now collecting approximately ten to fifteen percent of the pledges and donations it historically has received.

18

15180580.1

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST NATIONAL PILGRIM AND FATIMA CENTER U.S.A.
### (Common Law Trademark Infringement)

138.   Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through 133 above as if they were stated in full herein.

139.   Defendants National Pilgrim and Fatima Center U.S.A., in connection with the their use of the FATIMA CENTER Mark, used in commerce a slogan, trade dress, word, term, name, symbol or device, or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact, which was or is likely to cause confusion or to cause mistake or to deceive as to an affiliation, connection, or association with Plaintiff.

140.   Defendants National Pilgrim's and Fatima Center U.S.A.'s actions constitute willful infringement of Plaintiff's exclusive rights in the FATIMA CENTER Mark.

141.   In violation of the common law of the State of New York, Defendants National Pilgrim and Fatima Center U.S.A., have willfully used and infringed Plaintiff's trademarks, in connection with solicitation of religious and charitable donations, sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

142.   As a direct and proximate result of Defendants National Pilgrim's and Fatima Center U.S.A.'s conduct, Plaintiff has suffered irreparable harm to its valuable marks and its reputation in the community.  Unless Defendants National Pilgrim and Fatima Center U.S.A. are restrained from further infringement of Plaintiff's marks, Plaintiff will continue to be irreparably harmed.

19

15180580 1

143.    Plaintiff has no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants National Pilgrim's and Fatima Center U.S.A.'s acts are allowed to continue.

144.    As a direct and proximate result of Defendants National Pilgrim's and Fatima Center U.S.A.'s conduct, Plaintiff has suffered damages to its valuable marks, fund raising, outreach platform, reputation, and other damages in an amount to be proven at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST NATIONAL PILGRIM AND FATIMA CENTER U.S.A.
### (Violation of Lanham Act, 15 U.S.C. § 1125 )

145.    Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through 140 above as if they were stated in full herein.

146.    In violation of 15 U.S.C. § 1125, Defendants National Pilgrim and Fatima Center U.S.A., in connection with the their use of the FATIMA CENTER Mark, used in commerce a slogan, trade dress, word, term, name, symbol or device, or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact, which was or is likely to cause confusion or to cause mistake or to deceive as to an affiliation, connection, or association with Plaintiff.

147.    Defendants National Pilgrim's and Fatima Center U.S.A.'s actions constitute willful infringement of Plaintiff's exclusive rights in the FATIMA CENTER Mark.

148.    In violation of 15 U.S.C. § 1125, Defendants National Pilgrim and Fatima Center U.S.A., have willfully used and infringed Plaintiff's trademarks, in connection with solicitation of religious and charitable donations, sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

20

15180580.1

149.    As a direct and proximate result of Defendants National Pilgrim's and Fatima Center U.S.A.'s conduct, Plaintiff has suffered irreparable harm to its valuable marks and its reputation in the community. Unless Defendants National Pilgrim and Fatima Center U.S.A. are restrained from further infringement of Plaintiff's marks, Plaintiff will continue to be irreparably harmed.

150.    Plaintiff has no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants National Pilgrim's and Fatima Center U.S.A.'s acts are allowed to continue.

151.    As a direct and proximate result of Defendants National Pilgrim's and Fatima Center U.S.A.'s conduct, Plaintiff has suffered damages to its valuable marks, fund raising, outreach platform, reputation, and other damages in an amount to be proven at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST NATIONAL PILGRIM AND FATIMA CENTER U.S.A.
#### (Unlawful Use of Name or Identification of
#### Non-Profit Organization In Violation of GBL § 397)

152.    Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through 147 above as if they were stated in full herein.

153.    Defendants National Pilgrim and Fatima Center U.S.A., in connection with the their use of the FATIMA CENTER Mark, used for advertising purposes or for purposes of trade, the name, symbol, device or other identification of Plaintiff, a non-profit corporation, organized exclusively for religious purposes, without having first obtained the written consent of Plaintiff, in violation of GBL § 397.

154.    As a direct and proximate result of Defendants National Pilgrim's and Fatima Center U.S.A.'s conduct, Plaintiff has suffered irreparable harm to its valuable marks, name,

21

15180580.1

identification and its reputation in the community. Unless Defendants National Pilgrim and

Fatima Center U.S.A. are restrained from further infringement of Plaintiff's marks and unlawful

use of Plaintiff's name and identification, Plaintiff will continue to be irreparably harmed.

155.    Plaintiff has no adequate remedy at law that will compensate for the continued

and irreparable harm that it will suffer if Defendants National Pilgrim's and Fatima Center

U.S.A.'s acts are allowed to continue.

156.    As a direct and proximate result of Defendants National Pilgrim's and Fatima

Center U.S.A.'s conduct, Plaintiff has suffered damages to its valuable marks, fund raising, name

and identification, outreach platform, reputation, and other damages in an amount to be proven at

trial.

157.    Defendants, National Pilgrim and Fatima Center U.S.A., in connection with the

their use of the FATIMA CENTER Mark, knowingly violated GBL § 397(1).

158.    As a result of Defendants National Pilgrim's and Fatima Center U.S.A.'s

knowing violation of GBL § 397, Plaintiff is entitled to an award of exemplary damages in a

discretionary amount to be awarded at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST NATIONAL PILGRIM AND FATIMA CENTER U.S.A.
### (Common Law Unfair Competition)

159.    Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through

154 above as if they were stated in full herein.

160.    In violation of the common law of the State of New York, Defendants National

Pilgrim and Fatima Center U.S.A., have engaged in unfair competition by using a mark so

similar in sight, sound and meaning to that of Plaintiff's FATIMA CENTER Mark that the public

will be confused as to the identity and source of the products and/or services rendered.

22

15180580.1

161.    Upon information and belief, Defendants National Pilgrim and Fatima Center U.S.A. have acted in bad faith, without Plaintiff's authorization or consent, and with full knowledge of Plaintiff's FATIMA CENTER Mark.

162.    Defendants National Pilgrim's and Fatima Center U.S.A.'s aforementioned acts constitute unfair competition in violation of Plaintiff's rights under New York State common law, as preserved by GBL § 360-o.

163.    As a direct and proximate result of Defendants National Pilgrim's and Fatima Center U.S.A.'s conduct, Plaintiff has suffered irreparable harm to its valuable marks and its reputation in the community.  Unless Defendants National Pilgrim and Fatima Center U.S.A. are restrained from further infringement of Plaintiff's marks and unfair competition, Plaintiff will continue to be irreparably harmed.

164.    Plaintiff has no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants National Pilgrim's and Fatima Center U.S.A.'s acts are allowed to continue.

165.    As a direct and proximate result of Defendants National Pilgrim's and Fatima Center U.S.A.'s conduct, Plaintiff has suffered damages to its valuable marks, fund raising, outreach platform, reputation, and other damages in an amount to be proven at trial.

### AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST NATIONAL PILGRIM AND FATIMA CENTER U.S.A.
#### (Injury to Business Reputation, Dilution and Unfair Competition
#### In Violation of New York's General Business Law §360-I)

166.    Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through 161 above as if they were stated in full herein.

167.    Defendants National Pilgrim and Fatima Center U.S.A., in connection with the their use of the FATIMA CENTER Mark and in issuing and publishing the August 22, 2017

23

15180580.1

letter, the September 1, 2017 letter and "**URGENT NOTICE**" as set forth above, caused a likelihood of injury to the reputation of Plaintiff and dilution of the distinctive quality of the FATIMA CENTER Mark in violation of New York General Business Law §360-I.

168.    As a direct and proximate result of Defendants National Pilgrim's and Fatima Center U.S.A.'s conduct, Plaintiff has suffered irreparable harm to its valuable marks and its reputation in the community.  Unless Defendants National Pilgrim and Fatima Center U.S.A. are restrained from further infringement of Plaintiff's marks, unfair competition and dilution, Plaintiff will continue to be irreparably harmed.

169.    Plaintiff has no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants National Pilgrim's and Fatima Center U.S.A.'s acts are allowed to continue.

170.    As a direct and proximate result of Defendants National Pilgrim's and Fatima Center U.S.A.'s conduct, Plaintiff has suffered damages to its valuable marks, fund raising, outreach platform, reputation, and other damages in an amount to be proven at trial.

### AS AND FOR A SIXTH CAUSE OF ACTION
### AGAINST NATIONAL PILGRIM AND FATIMA CENTER U.S.A.
#### (Deceptive Business Practices in Violation of GBL § 349)

171.    Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through 166 above as if they were stated in full herein.

172.    Defendants National Pilgrim and Fatima Center U.S.A., in connection with the their use of the FATIMA CENTER Mark and in issuing and publishing the August 22, 2017 letter, the September 1, 2017 letter and "**URGENT NOTICE**" as set forth above, have engaged in deceptive acts or practices in the conduct of a business, trade or commerce or in the furnishing of a service in New York State in violation of GBL § 349.

24

15180580.1

173. Defendants National Pilgrim and Fatima Center U.S.A. have engaged in and continue to engage in acts or practices which are misleading in a material way.

174. Defendants National Pilgrim and Fatima Center U.S.A. have engaged in and continue to engage in acts or practices which are consumer-oriented and directed to the public at-large and include Plaintiff's mail recipients and donors.

175. The aforesaid deceptive acts and practices have induced and caused Plaintiff's mail recipients and donors to pledge and give donations to Defendants National Pilgrim and Fatima Center U.S.A. that would have otherwise been pledged and donated to Plaintiff but for Defendants National Pilgrim's and Fatima Center U.S.A.'s misleading and deceptive acts or practices.

176. Plaintiff has no adequate remedy at law that will compensate for the continued and irreparable harm that it will suffer if Defendants National Pilgrim's and Fatima Center U.S.A.'s deceptive acts or practices are allowed to continue.

177. As a direct and proximate result of Defendants National Pilgrim's and Fatima Center U.S.A.'s conduct, Plaintiff has suffered damages to its valuable marks, fund raising, outreach platform, reputation, and other damages in an amount to be proven at trial.

178. As a result of Defendants National Pilgrim and Fatima Center U.S.A.'s violation of GBL § 349, Plaintiff is entitled to an award of treble damages and attorney's fees in an amount to be awarded at trial.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### AGAINST NATIONAL PILGRIM AND FATIMA CENTER U.S.A.
#### (Conversion of Plaintiff's Mailing List)

179. Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through 174 above as if they were stated in full herein.

15180580.1

180.    At all relevant times, Plaintiff had a possessory right or interest in the aforementioned Plaintiff's Mailing List.

181.    At all relevant times, Plaintiff was the rightful owner of Plaintiff's Mailing List.

182.    Defendants National Pilgrim and Fatima Center U.S.A. have no possessory right or lawful interest in Plaintiff's Mailing List.

183.    National Pilgrim's permission to use Plaintiff's Mailing List has been rescinded by Plaintiff.

184.    Fatima Center U.S.A. has never had permission to use Plaintiff's Mailing List.

185.    Defendants National Pilgrim and Fatima Center U.S.A. have exercised dominion over Plaintiff's Mailing List, have used it for their benefit, and have interfered with it in derogation of Plaintiff's property rights.

186.    Defendants National Pilgrim and Fatima Center U.S.A. have refused Plaintiff's requests to cease use of and return Plaintiff's Mailing List.

187.    As a result of Defendants National Pilgrim's and Fatima Center U.S.A.'s conversion of Plaintiff's Mailing List, Plaintiff has been restricted in its ability to conduct fund raising, obtain donations and perform outreach and has suffered other direct financial damages in an amount to be proven at trial.

188.    As a result of Defendants National Pilgrim's and Fatima Center U.S.A.'s gross, wanton and deliberate conversion of Plaintiff's Mailing List, Plaintiff is entitled to an award of punitive damages and attorney's fees in an amount to be awarded at trial.

26

15180580.1

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## AGAINST NATIONAL PILGRIM
### (Conversion of Plaintiff's Niagara Falls Facility Funds)

189.    Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through 183 above as if they were stated in full herein.

190.    At all relevant times, Plaintiff had a possessory right or interest in the aforementioned funds raised during the fund raising campaign for Plaintiff's Niagara Falls Facility.

191.    Defendant National Pilgrim has no possessory right or lawful interest in funds raised during the fund raising campaign for Plaintiff's Niagara Falls Facility.

192.    Defendant National Pilgrim has exercised dominion over the funds raised during the fund raising campaign for Plaintiff's Niagara Falls Facility, and have interfered with it in derogation of Plaintiff's property rights.

193.    Upon information and belief Defendant National Pilgrim has used the funds raised during the fund raising campaign for Plaintiff's Niagara Falls Facility for its own benefit.

194.    As a result of Defendant National Pilgrim's conversion of the funds raised during the fund raising campaign for Plaintiff's Niagara Falls Facility, Plaintiff has been damaged financially and has been required to pay the mortgage loan that otherwise would have been paid for from the funds raised during the fund raising campaign for Plaintiff's Niagara Falls Facility.

195.    As a result of Defendants National Pilgrim's gross, wanton and deliberate conversion of the funds raised during the fund raising campaign, Plaintiff is entitled to an award of punitive damages and attorney's fees in an amount to be awarded at trial.

15180580.1

## AS AND FOR A NINTH CAUSE OF ACTION
## AGAINST NATIONAL PILGRIM
### (Conversion of Plaintiff's Property from Plaintiff's Niagara Falls Facility)

196.    Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through 189 above as if they were stated in full herein

197.    At all relevant times, Plaintiff was the rightful owner of certain religious materials, statuary, publications, literature and equipment kept at Plaintiff's Niagara Falls Facility.

198.    Defendant National Pilgrim has no possessory right or lawful interest in Plaintiff's materials, property and equipment kept at Plaintiff's Niagara Falls Facility.

199.    Defendant National Pilgrim has exercised dominion over Plaintiff's materials, property and equipment, have used it for their benefit, and have interfered with it in derogation of Plaintiff's property rights.

200.    Defendant National Pilgrim has refused Plaintiff's requests to return Plaintiff's materials, property and equipment.

201.    As a direct and proximate result of Defendant National Pilgrim's conversion of Plaintiff's materials, property and equipment, Plaintiff has been deprived of the use of materials, property and equipment, has been restricted in its ability to conduct fund raising, obtain donations and perform outreach and has suffered other damages in an amount to be proven at trial.

## AS AND FOR A TENTH CAUSE OF ACTION
## AGAINST NATIONAL PILGRIM AND FATIMA CENTER U.S.A.
### (Defamation)

202.    Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through 195 above as if they were stated in full herein.

28

15180580.1

203.    The aforementioned August 22, 2017 letter, contained false and defamatory statements, implications and assertions as set forth herein, including, without limitation: (a) that "SJM was created to receive and process mail received within the United States"; (b) that SJM was merely "a mail processing facility"; (c) that "[t]he Board of Directors of SJM were not involved in the creation and implementation of programs to achieve The Fatima Center's mission, nor in the writing or production of The Fatima Center literature, nor even in making decisions about the daily operations of SJM"; (d) that "[a]ll of [SJM's operations and programming were directed and/or] done by Father Gruner and The Fatima Center management team."

204.    The false and defamatory statements contained in the August 22, 2017 letter had a tendency to expose Plaintiff to public hatred, contempt, ridicule or disgrace.

205.    The false and defamatory statements contained in the August 22, 2017 letter referred to Plaintiff.

206.    The August 22, 2017 letter was published and distributed by Defendants National Pilgrim and Fatima Center U.S.A. to third-parties.

207.    The August 22, 2017 letter contained statements referring to Plaintiff that were false.

208.    At the time Defendants National Pilgrim and Fatima Center U.S.A. made and published the false and defamatory statements referring to Plaintiff, Defendants National Pilgrim and Fatima Center U.S.A. knew that the statements were false or acted in reckless disregard of the truth or falsity of the statements.

209.    As a result of Defendants National Pilgrim's and Fatima Center U.S.A.'s false and defamatory statements contained in the August 22, 2017 letter, Plaintiff has been restricted

29

in its ability to conduct fund raising, obtain donations and perform outreach and has suffered

other direct financial damages in an amount to be proven at trial.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## AGAINST NATIONAL PILGRIM AND FATIMA CENTER U.S.A.
### (Defamation)

210.    Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through

203 above as if they were stated in full herein.

211.    The aforementioned September 1, 2017 letter contained false and defamatory

statements, implications and assertions as set forth herein including, without limitation: (a) that

Plaintiff was "formed by Father Nicholas Gruner and [has] been maintained by the management

team, Board of Directors and staff of The Fatima Center Canada offices since Father's passing in

April 2015"; and (b) that "Although your monthly payments were received and processed

through Servants of Jesus and Mary, all funds were forwarded to the head office in Canada. . . ."

212.    The false and defamatory statements contained in the September 1, 2017 letter

had a tendency to expose Plaintiff to public hatred, contempt, ridicule or disgrace.

213.    The false and defamatory statements contained in the September 1, 2017 letter

referred to Plaintiff.

214.    The September 1, 2017 letter was published and distributed by Fatima Center

U.S.A. and National Pilgrim to third-parties.

215.    The September 1, 2017 letter contained statements referring to Plaintiff that were

false.

216.    At the time Defendants National Pilgrim and Fatima Center U.S.A. made and

published the false and defamatory statements referring to Plaintiff, Defendants National Pilgrim

30

15180580.1

and Fatima Center U.S.A. knew that the statements were false or acted in reckless disregard of the truth or falsity of the statements.

217.    As a result of Defendants National Pilgrim's and Fatima Center U.S.A.'s false and defamatory statements contained in the September 1, 2017 letter, Plaintiff has been restricted in its ability to conduct fund raising, obtain donations and perform outreach and has suffered other direct financial damages in an amount to be proven at trial.

## AS AND FOR A TWELFTH CAUSE OF ACTION
## AGAINST NATIONAL PILGRIM AND FATIMA CENTER U.S.A.
### (Defamation)

218.    Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through 211 above as if they were stated in full herein.

219.    The aforementioned "**URGENT NOTICE**" contained false and defamatory statements, implications and assertions as set forth herein including, without limitation: (a) that Plaintiff "can not collect your monthly donation because they cannot fulfill the goals which your gifts are used for"; and (b) that "SJM is trying to change your donation to another club that they have now created and is not affiliated with The Fatima Center or the work of Father Gruner."

220.    The false and defamatory statements contained in the **URGENT NOTICE**" had a tendency to expose Plaintiff to public hatred, contempt, ridicule or disgrace.

221.    The false and defamatory statements contained in the **URGENT NOTICE**" referred to Plaintiff.

222.    The "**URGENT NOTICE**" was published and distributed by Fatima Center U.S.A. and National Pilgrim to third-parties.

223.    The "**URGENT NOTICE**" contained statements referring to Plaintiff that were false.

31

15180580.1

224.    At the time Defendants National Pilgrim and Fatima Center U.S.A. made and published the false and defamatory statements referring to Plaintiff, Defendants National Pilgrim and Fatima Center U.S.A. knew that the statements were false or acted in reckless disregard of the truth or falsity of the statements.

225.    As a result of Defendants National Pilgrim's and Fatima Center U.S.A.'s false and defamatory statements contained in the **"URGENT NOTICE"**, Plaintiff has been restricted in its ability to conduct fund raising, obtain donations and perform outreach and has suffered other direct financial damages in an amount to be proven at trial.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION**
**AGAINST ANDREW CESANEK**
**(Breach of Fiduciary Duty)**

226.    Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through 219 above as if they were stated in full herein.

227.    As an employee of Plaintiff, Defendant Andrew Cesanek owed a fiduciary duty to Plaintiff.

228.    As an employee of Plaintiff, Defendant Andrew Cesanek owed a duty of loyalty to Plaintiff.

229.    As member of Plaintiff's board of directors, Defendant Andrew Cesanek owed a fiduciary duty to Plaintiff.

230.    As a member of Plaintiff's board of directors, Defendant Andrew Cesanek owed a duty of loyalty to Plaintiff.

231.    Defendant Andrew Cesanek breached his fiduciary duties and duties of loyalty to Plaintiff by forming Fatima Center U.S.A., by serving as a director of Fatima Center U.S.A., by soliciting donations in the name of Fatima Center U.S.A., by operating, supervising, controlling

32

15180580.1

and participating in the wrongful and tortious acts of Fatima Center U.S.A., by failing to disclose the formation and existence of Fatima Center U.S.A. to Plaintiff, by failing to disclose his position as a director of Fatima Center U.S.A., by listing Plaintiff's Niagara Falls Facility as its location for mail process on its Articles of Organization filed with the New York State Department of State, and by conducting business activities on behalf of Fatima Center U.S.A. from Plaintiff's Niagara Falls Facility without the right or permission of Plaintiff.

232.    Defendant Andrew Cesanek breached his fiduciary duties and duties of loyalty to Plaintiff by signing, publishing and distributing the defamatory August 22, 2017 letter, by signing, publishing and distributing the defamatory September 1, 2017 letter, and by publishing and distributing the defamatory **"URGENT NOTICE"**.

233.    Defendant Andrew Cesanek breached his fiduciary duties and duties of loyalty to Plaintiff by participating in the wrongful and tortious acts of National Pilgrim and Fatima Center U.S.A., by engaging in a course of conduct designed to infringe on the FATIMA CENTER Mark, and cause confusion as to the source, sponsorship, or affiliation of Plaintiff's services and divert donations intended for Plaintiff, by engaging in unfair competition, deceptive business practices, conversion, and by otherwise acting in bad faith, adversely to Plaintiff's interests, and in a manner inconsistent with his duties as Plaintiff's employee and as a member of Plaintiff's board of directors,

234.    As a direct and proximate result of Defendant Andrew Cesanek's conduct, Plaintiff has suffered damages to its valuable marks, fund raising, name and identification, outreach platform, reputation, and other damages in an amount to be proven at trial.

33

15180580.1

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
## AGAINST NATIONAL PILGRIM AND FATIMA CENTER U.S.A.
### (Aiding and Abetting Breach of Fiduciary Duty)

235.    Plaintiff repeats and reasserts all allegations contained in Paragraphs 1 through 228 above as if they were stated in full herein.

236.    Defendants National Pilgrim and Fatima Center U.S.A. knew that at all times relevant hereto, up to and including September 11, 2017, Andrew Cesanek was an employee of Plaintiff.

237.    Defendants National Pilgrim and Fatima Center U.S.A. knew that at all times relevant hereto, up to and including August 28, 2017, Andrew Cesanek was a member of Plaintiff's board of directors.

238.    Defendants National Pilgrim and Fatima Center U.S.A. knowingly induced, provided substantial assistance, and participated in Defendant Andrew Cesanek's breach of his fiduciary duties and duties of loyalty to Plaintiff.

239.    As a direct and proximate result of Defendants National Pilgrim's and Fatima Center U.S.A.'s conduct, Plaintiff has suffered damages to its valuable marks, fund raising, name and identification, outreach platform, reputation, and other damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff, Servants of Jesus and Mary, Inc., d/b/a The Fatima Center, prays that this Honorable Court enter judgment against Defendants The National Committee for the National Pilgrim Virgin of Canada, The Fatima Center U.S.A., Inc., and Andrew Cesanek:

A.    Granting each of the causes of action made herein;

B.    Declaring Defendants National Pilgrim and Fatima Center U.S.A. have infringed the trademark rights of Plaintiff;

34

15180580.1

C.    Preliminary and permanently enjoining Defendants National Pilgrim and Fatima

Center U.S.A., their representatives, assigns or successors, or any subsidiaries, parents, divisions,

agents, servants, employees thereof, and/or and those in privity with any of them, from:

1.  Soliciting donations, providing services, purchasing, selling, distributing, marketing, promoting, advertising, manufacturing, or otherwise using either of the "THE FATIMA CENTER," "'THE FATIMA NETWORK" and "FATIMA NETWORK TELEVISION (FNTV)" marks, or any marks confusingly similar thereto, in the United States; and

2.  Using any logo, trade name, or trademark confusingly similar to either of the "THE FATIMA CENTER," "'THE FATIMA NETWORK" and "FATIMA NETWORK TELEVISION (FNTV)" marks, which may be calculated to falsely represent, or which has the effect of falsely representing, that the products or services of Defendants are sponsored by, authorized by, or in any way associated with Plaintiff in the United States; and

3.  Infringing on "THE FATIMA CENTER," "'THE FATIMA NETWORK" and "FATIMA NETWORK TELEVISION (FNTV)" marks in the United States; and

4.  Unfairly competing with Plaintiff in the solicitation of donations, providing services, offering for sale, distribution, advertisement, or any other use of the "THE FATIMA CENTER," "'THE FATIMA NETWORK" and "FATIMA NETWORK TELEVISION (FNTV)" marks in the United States; and

5.  Falsely representing that Defendants, its products, or its services are connected with Plaintiff, or sponsored or associated with Plaintiff, or engaging in any act that is likely to cause, the trade and/or members of the purchasing public to believe that Defendants, its products, or its services, are associated with Plaintiff, including, but not limited to, making false associations by virtue of the use of "THE FATIMA CENTER," "'THE FATIMA NETWORK" and "FATIMA NETWORK TELEVISION (FNTV)" marks in the United States; and

6.  Diluting "THE FATIMA CENTER," "'THE FATIMA NETWORK" and "FATIMA NETWORK TELEVISION (FNTV)" marks in the United States; and

7.  Using, reproducing, copying or relying on Plaintiff's Mailing List or any information, content or data contained therein or derived therefrom; and

8.  Deleting, altering or otherwise impairing Plaintiff's Mailing List or any information, content or data contained therein; and

35

15180580.1

D.    Ordering Defendant National Pilgrim to abandon U.S. Tm. Application no. 87/640,196; and

E.    Ordering Defendant Fatima Center USA to cease all operations in the United States and formally dissolve; and

F.    Ordering Defendants National Pilgrim and Fatima Center U.S.A. to rescind any objections Defendants have made to Plaintiff banking and/or depositing contributions made payable to "THE FATIMA CENTER," "'THE FATIMA NETWORK" and "FATIMA NETWORK TELEVISION (FNTV)" marks; and

G.    Ordering Defendants National Pilgrim and Fatima Center U.S.A. to account for and pay over to Plaintiff all funds raised in the United States since August 22, 2017; and

H.    Ordering Defendant National Pilgrim to account for and pay over to Plaintiff all funds raised to pay down the mortgage of Plaintiff's Niagara Falls facility; and

I.    Ordering Defendants National Pilgrim and Fatima Center U.S.A. to return Plaintiff's Mailing List to Plaintiff in a format and form such that it can be utilized by Plaintiff; and

J.    Ordering Defendants National Pilgrim and Fatima Center U.S.A. to return to Plaintiff's all materials, property and equipment removed from Plaintiff's Niagara Falls Facility; and

K.    Granting Plaintiff statutory or actual money damages in an amount to be ascertained at trial; and

L.    Granting Plaintiff exemplary damages pursuant to GBL § 397; and

M.    Granting Plaintiff treble damages pursuant to GBL § 349; and

36

N.      Granting Plaintiff punitive damages on the Seventh and Eighth Cause of Action

for Conversion; and

O.      Granting Plaintiff an award for costs of this action; and

P.      Granting Plaintiff an award of its attorneys' fees as available under all applicable

        statutes;

Q.      Awarding Plaintiff pre-judgment and post-judgment interest as allowed by law;

R.      Granting such other, further relief that this Honorable Court deems fair,

        reasonable and equitable.

**DATED**: June 5, 2018                    **BARCLAY DAMON LLP**

                                           By: _____
                                                Matthew J. Larkin, Esq.
                                                Jason S. Nardiello, Esq.

                                           *Attorneys for Plaintiff*
                                           Office and Post Office Address
                                           Barclay Damon Tower
                                           125 East Jefferson Street
                                           Syracuse, New York 13202
                                           Telephone: (315) 425-2805

TO:     **Kloss, Stenger & LoTempio**
        Justin D. Kloss, Esq.
        *Attorneys for Defendants*
        *The National Committee for the National Pilgrim Virgin of Canada,*
        *and The Fatima Center U.S.A., Inc.*
        Office and Post Office Address
        69 Delaware Street, Suite 1003
        Buffalo, New York 14202
        Telephone: (716) 853-1111

        **Andrew Cesanek**
        3143 Bellreng Drive, Apt. 11
        Niagara Falls, NY 14304

37

15180580.1

STATE OF NEW YORK        )
                         ) SS.:
COUNTY OF FRANKLIN       )


    **Ellen Montgomery**, being duly sworn, deposes and says that she is the Vice President of

Servants of Jesus and Mary, Inc., d/b/a The Fatima Center, the corporation named in the within

action; that deponent has read the foregoing Amended Complaint and knows the contents

thereof; that the same is true to her own knowledge, except as to those matters therein stated to

be alleged upon information and belief and that, as to those matters, she believes them to be true;

and that the grounds for deponent's belief as to such matters are personal inquiry and an

examination of business records of Servants of Jesus and Mary, Inc., d/b/a The Fatima Center,

conducted in the course of deponent's duties as an employee of the corporation.


                                        **Ellen Montgomery**

Subscribed and sworn to before me
this **5** day of June, 2018.

                               **APRIL MARIE PHILLIPS**
                           Notary Public, State of New York
                            Reg. No. 01PH6373455
                            Qualified in Franklin County
          Notary Public      Commission Expires April 9, 20 22

38

# Exhibit A

N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS

                                        ALBANY, NY  12231-0001

                        FILING  RECEIPT
================================================================================
ENTITY NAME : SERVANTS OF JESUS AND MARY, INC.


DOCUMENT TYPE : ASSUMED NAME CERTIFICATE


SERVICE COMPANY  :     +++ NO SERVICE COMPANY +++        CODE:

================================================================================
FILED: 09/16/2004        CASH#: 129425        FILM#: C352850-2

PRINCIPAL LOCATION
------------------

17000 STATE ROUTE 30

CONSTABLE
NY    12926



COMMENT:


ASSUMED NAME
------------
THE FATIMA CENTER

================================================================================
 FILER                        * FEES   :  75.00  PAYMENTS:   75.00
 -----                        * ----            --------
                              * FILING :  25.00  CASH   :
                              * COUNTY :  50.00  CHECK  :00075.00
                              * COPIES :   0.00  C CARD :
 SERVANTS OF JESUS AND MARY, INC.  * MISC   :
 17000 STATE ROUTE 30         * HANDLE :    .00
                              *                 REFUND:
 CONSTABLE            NY  12926  *                ------
================================================================================
                    DO3HD104                    DOS-281 (8/98)

N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS                    ALBANY, NY  12231-0001

FILING  RECEIPT
=====================================================================
ENTITY NAME : SERVANTS OF JESUS AND MARY, INC.


DOCUMENT TYPE : ASSUMED NAME CERTIFICATE


SERVICE COMPANY  :      +++  NO SERVICE COMPANY  +++          CODE:


=====================================================================
FILED: 09/16/2004          CASH#: 129407          FILM#: C352832-2

PRINCIPAL LOCATION
------------------

17000 STATE ROUTE 30

CONSTABLE
NY    12926








COMMENT:


ASSUMED NAME
------------
THE FATIMA NETWORK


=====================================================================
    FILER                        * FEES  :   75.00  PAYMENTS:   75.00
    -----                        * ----            --------
                                 * FILING :   25.00  CASH   :
                                 * COUNTY :   50.00  CHECK  :00075.00
                                 * COPIES :    0.00  C CARD :
    SERVANTS OF JESUS AND MARY, INC.  * MISC   :
    17000 STATE ROUTE 30          * HANDLE :    .00
                                 *               REFUND:
    CONSTABLE         NY  12926   *               ------
=====================================================================
                    DO3HD104                    DOS-281 (8/98)

N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS                          ALBANY, NY  12231-0001

FILING  RECEIPT
=============================================================================
ENTITY NAME : SERVANTS OF JESUS AND MARY, INC.


DOCUMENT TYPE : ASSUMED NAME CERTIFICATE


SERVICE COMPANY  :        +++ NO SERVICE COMPANY +++              CODE:


=============================================================================
FILED: 09/16/2004          CASH#: 129426          FILM#: C352851-2

PRINCIPAL LOCATION
------------------

17000 STATE ROUTE 30

CONSTABLE
NY    12926


COMMENT:


ASSUMED NAME
------------
FATIMA NETWORK TELEVISION (FNTV)

=============================================================================
  FILER                          * FEES  :   75.00  PAYMENTS:   75.00
  -----                          * ----             --------
                                 * FILING :   25.00  CASH   :
                                 * COUNTY :   50.00  CHECK  :00075.00
                                 * COPIES :    0.00  C CARD :
  SERVANTS OF JESUS AND MARY, INC. * MISC  :
  17000 STATE ROUTE 30           * HANDLE :     .00
                                 *                  REFUND:
  CONSTABLE          NY  12926   *                  ------
=============================================================================
                    DO3HD104                      DOS-281 (8/98)

# EXHIBIT B

J.M.J.

"Our mission is to ensure that the entire Message of Fatima is
fully known, accurately understood, and deeply appreciated
so that it may be followed by all."    ... *Father Nicholas Gruner*

Tuesday, August 22, 2017
Feast of the Immaculate Heart of Mary

████████████████

In June 1978, Father Gruner became the Executive Director of The National
Committee for the National Pilgrim Virgin of Canada - which came to be known as
The Fatima Center - and shortly thereafter published the first issue of *The Fatima
Crusader*.

Over the years, the graces sent from Our Lord through Our Lady and Father's
steadfast dedication turned this modest apostolate into the thriving, international
organization it is today.

From the beginning, Father Gruner made it clear that the mission of The
Fatima Center was to promote the ENTIRE message of Fatima to EVERYONE.

We, the Board of Directors, management team and staff of The Fatima Center,
want to stay true to the mission Father gave us. Sadly, however, there are those who
think that mission should be altered in fundamental ways.

In 1988, Father Gruner set up Servants of Jesus and Mary, Inc. ("SJM"), a not-
for-profit corporation under the laws of New York State. SJM was created to receive
and process mail received from within the United States.

The Board of Directors of SJM were not involved in the creation and
implementation of programs to achieve The Fatima Center's mission, nor in the
writing or production of The Fatima Center literature, nor even in making decisions
about the daily operations of SJM. All of that was done by Father Gruner and The
Fatima Center management team.

Since Father Gruner's death, the Board of Directors of SJM have become more
active in the decision-making process at the apostolate. Increasingly, however, they

- 2 -

have pushed for The Fatima Center to change direction and become more radical in its orientation. They want to involve us in several controversial issues within the Church today about which Catholics of goodwill can disagree. Recently, they have also begun to make arbitrary decisions that negatively affect the operational effectiveness of the apostolate and hinder us from carrying out our mission.

Father Gruner would not have agreed with any change to the mission of The Fatima Center and neither do we. We owe it to Our Lady, to Father, and to our supporters to stay completely focused on our mission until it is accomplished. We cannot and will not allow our apostolate to be sidetracked or prevented from making the ENTIRE Fatima Message understood and followed by EVERYONE.

To preserve Father Gruner's legacy and the integrity of The Fatima Center's mission, we find it necessary to sever our connection with SJM.

To do that, we've established The Fatima Center USA Inc. in western New York state, just across the border from our Headquarters in Fort Erie, Ontario. Father Gruner began the process of moving the U.S. mail-processing facility (Constable, NY office) closer to Fort Erie to increase the operational efficiency of the apostolate, but passed away before the move was completed. We are now completing it.

All future checks and donations should be made to The Fatima Center USA Inc., rather than to the Servants of Jesus and Mary. Tax receipts will be issued from The Fatima Center USA Inc. Since The Fatima Center USA will handle all mail from the U.S., you will notice a different mailing address on future mailings, along with the request that donations now be made to: The Fatima Center USA Inc.

None of this will affect the work of The Fatima Center. Leonard Cecere and Andrew Cesanek, both long-time friends and confidantes of Father, will continue to serve the apostolate as President and Vice-President, respectively. The Board of Directors will continue to be consulted on major issues affecting the apostolate. Most importantly, The Fatima Center's management team – trained by Father Gruner over decades – will continue to work hard every day to complete the mission Father began.

Father Gruner was the head and heart of The Fatima Center and with his passing, the apostolate will never be quite the same. Fortunately, several good, faithful priests who wish to see Father's work continue have stepped forward to serve on our Advisory Council of Priests and/or to help the apostolate in other ways. We will continue to rely on their counsel, guidance and spiritual direction as we move

-4-

forward.

In short, thanks to Father's careful stewardship and your prayers and generosity, the work started by a lone priest 39 years ago remains remarkably as it was during his long and loving tenure as its leader.

With your continued support, we pledge to stay focused on the mission given to us by Father to make the full Fatima Message understood and followed by all. The Fatima Center has many ongoing initiatives and important plans for the rest of 2017 and into next year.

We are confident we can fulfill our mission, in part because Father's love, courage and persistence continues to inspire enthusiasm and hope in us, but mostly because we know the work we do is Our Lady's work and with Her on our side, we cannot fail.

May Her Triumph come soon.

In Jesus, Mary and Joseph,

Lenny Cecere,
President, The Fatima Center

Andrew M. Cesanek,
Vice-President, The Fatima Center

Miriam Gruner,
Board Member, The Fatima Center

Michael Longhi,
General Manager, The Fatima Center

Joanna Swords,
Division Manager, Apostolic Outreach
The Fatima Center

P.S.   Collectively, we have more than 93 years of experience working with Father Gruner to spread the Message of Fatima. We are determined to carry on that work. Please continue to support us as you have in the past with your prayers and alms. We know the Triumph of the Immaculate Heart of Mary will come. We have Her promise.

P.P.S. All of our phone numbers remain the same and the same people are still answering the phones. So if you call The Fatima Center you'll notice no change at all.

NYSCEF DOC. NO. 5

# EXHIBIT C

EXHIBIT C

J. M. J.

Friday, September 1, 2017
Feast of the Twelve Holy Brothers

Dear Dean and Sandy,

Recently we sent you a letter (dated August 22, 2017) explaining the unfortunate yet necessary severance of ties with Servants of Jesus and Mary.

We are writing you today because you are a valued member of our pledge program and we want to address some concerns or questions you may have about your ongoing monthly membership.

Please be assured that these clubs were formed by Father Nicholas Gruner and have been maintained by the management team, Board of Directors and staff of The Fatima Center Canada offices since Father's passing in April 2015.

Although your monthly payments were received and processed through Servants of Jesus and Mary, all funds were forwarded to the head office in Canada and applied in accordance with the goals and purposes of the pledge clubs.

In order for this important work to continue, your monthly contributions will now be received and processed through The Fatima Center USA Inc. at P.O. Box 1470, Buffalo, NY 14240.

With this letter, we have included a reply envelope for you to send your post-dated checks. Please be sure to contact Servants of Jesus and Mary at 518-483-7626 and cancel your pledge club membership and ask them to void and return your post-dated checks to ensure you're not doubling up paying your pledge.

We at The Fatima Center are determined to stay true to Father Gruner's mission of making the Message of Fatima fully known, accurately understood, and deeply appreciated so that it may be followed by all. We cannot do that without your help.

Thank you for your ongoing prayers and support and may God bless you abundantly.

In Jesus, Mary and Joseph,

*Andrew M. Cesanek*
Andrew M. Cesanek

# EXHIBIT D

## URGENT NOTICE

If you are a member of;
The Crusaders of Mary
The Society of The Child Jesus
The International Fatima Rosary Crusade
The League of The Immaculate Heart
The Society of St. John Vianney
Apostles of the Rosary
The Brown Scapular Brigade

### please take note that

- We, The Fatima Center, are not changing any of the above monthly giving groups.
- If you have received a notice from *Servants of Jesus and Mary* (SJM) that the group you belong to, is changing you need to contact us immediately for any further information at 1-800-263-8160.
- SJM has been legally informed by us, The Fatima Center, that they can not collect your monthly donation because they cannot fulfill the goals which your gifts are used for.
- SJM is trying to change your donation to another club that they have now created and is not affiliated with the Fatima Center or the work of Father Gruner.

Please remember that Servants of Jesus and Mary claims that Pope Francis is not the Pope which is not the position of The Fatima Center. We want to continue with the work of Father Gruner of spreading the full Fatima Message which will lead to the Consecration of Russia and the release of the Third Secret.

**The Fatima Center USA Inc.**
**P.O. Box 1470, Buffalo, NY 14240**